# United States Tax Court

T.C. Memo. 2022-116

KEVIN T. LIPKA AND SHELLY Z. LIPKA,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11455-20L.                    Filed December 1, 2022.

————

As early as July 2016, Ps were facing an investigation by the State of New Jersey, in which P–H was formally indicted on July 12, 2018. Ps reported, but did not pay, a federal income tax liability of $466,076 for 2017. R issued to Ps notice and demand for payment of the 2017 liability and, when the balance remained unpaid, issued to Ps a Notice CP 90, "Intent to seize your assets and notice of your right to a hearing", in July 2019. Ps mailed to R a request for a collection due process hearing. They requested either that their 2017 liability be deemed currently not collectible or that they be granted an installment agreement; and they further asserted that the levy would impose economic hardship on them because of P–H's ongoing criminal case and associated legal expenses (which they did not quantify). R determined to deny Ps requested collection alternatives and to sustain the proposed levy, and Ps filed their petition for review in this Court.

*Held*: P–H's pending criminal case and the associated unquantified legal expenses did not create economic hardship within the meaning of Treas. Reg. § 301.6343-1(b)(4).

**Served 12/01/22**

**[*2]**    *Held, further*, R did not abuse his discretion in denying Ps' requested collection alternatives and determining to sustain the proposed levy.

————————

*Matthew T. Eyet*, for petitioners.

*Jonathan Bartolomei*, for respondent.

## MEMORANDUM OPINION

GUSTAFSON, *Judge*: This is a collection due process ("CDP") case brought by petitioners, Kevin and Shelly Lipka, pursuant to section 6330(d)[1] to review a determination by the Internal Revenue Service ("IRS") Independent Office of Appeals ("IRS Appeals") denying the Lipkas' request for a collection alternative and sustaining a notice of intent to levy to collect their unpaid federal income tax liability for the year 2017. Respondent, the Commissioner of Internal Revenue, filed a motion for summary judgment. We will grant the Commissioner's motion.

### *Background*

The Commissioner's motion establishes the following facts, which the Lipkas do not dispute. For reasons we explain below, we conclude that there is no genuine dispute of material fact and that this case is appropriate for summary adjudication.

*Petitioners' 2017 liability*

The Lipkas filed their federal income tax return for tax year 2017 reporting an income tax liability of $466,076. They did not pay that reported liability. The IRS sent them notice and demand for payment, but they did not pay their 2017 liability.

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), as in effect at the relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.

[*3] *The IRS's proposed levy*

On July 1, 2019, the IRS sent to the Lipkas a Notice CP 90, "Intent to seize your assets and notice of your right to a hearing", advising them of their right to request a CDP hearing with IRS Appeals within 30 days. The Lipkas submitted a timely Form 12153, "Request for a Collection Due Process or Equivalent Hearing". On that Form 12153, the Lipkas checked the boxes for "Installment Agreement", "Offer in Compromise", and "I Cannot Pay Balance". They also checked the box marked "Other", and in the corresponding space for the "Reason" for requesting a hearing, the Lipkas stated: "A collection alternative is necessary in furtherance of effective tax administration given Taxpayers' unusual financial circumstances".

*CDP hearing*

On December 9, 2019, IRS Appeals sent to the Lipkas an appointment letter scheduling their CDP hearing to be conducted as a telephone hearing on January 16, 2020, and stating that, in order for Appeals to consider alternative collection methods, the Lipkas must provide: (1) a completed Form 433–A, "Collection Information Statement for Wage Earners and Self-Employed Individuals"; (2) proof that estimated tax payments are paid in full for the year to date; and (3) a completed Form 656, "Offer In Compromise".

On January 7, 2020, the Lipkas requested that the CDP hearing be held face to face. IRS Appeals responded that if the Lipkas wished to have a face-to-face conference, then they needed to submit past-due estimated tax payments for tax year 2019 and a complete Form 433–A by January 15, 2020.

The Lipkas failed to provide the requested documentation to IRS Appeals by the January 15 deadline and never submitted Form 656. Instead, on January 16, 2020, they submitted an unsigned, partially completed Form 433–A. During the January 16 CDP hearing, they represented that Mr. Lipka was under criminal indictment by the State of New Jersey, that their real estate properties were being held by the State of New Jersey, and that they had neither money nor access to their assets to pay their 2017 tax liability. They also stated that they were currently unable to secure employment because of the criminal matter. The IRS Appeals officer asked the Lipkas to submit a completed Form 433–A and additional documentation substantiating their purported inability to pay and their lack of access to their assets.

**[\*4]** The Lipkas thereafter submitted a completed Form 433–A and attached financial information containing six months of partial bank statements.  On the basis of this information, the IRS Appeals officer determined that the Lipkas had gross monthly income of $66,934 and necessary monthly expenses of $17,954, thereby leaving them an approximate net monthly income of $48,980 to satisfy their outstanding tax liability for 2017.

The Lipkas subsequently presented additional documentation indicating (1) that they were defendants in a criminal matter and (2) that they held $685,918 in stocks and retirement accounts, which they alleged were pledged as security for a loan.  Their additional documentation also indicated that they owned six real estate properties, all of which they alleged had lis pendens recorded against them by the State of New Jersey in connection with the criminal matter.

On February 20, 2020, the IRS Appeals officer and the Lipkas participated in another telephone conversation.  During that call, the Lipkas maintained that their monthly income would soon decrease and mentioned that they were incurring significant legal expenses relating to their criminal matter. At the close of the conversation, the IRS Appeals officer requested that the Lipkas produce records verifying their decreasing income and the amount of their legal expenses, and gave them a deadline of February 26, 2020, to submit those documents.

On March 5, 2020, the Lipkas provided IRS Appeals with additional financial documentation, which the IRS Appeals officer used to recalculate their ability to pay.  On the basis of their additional documents, the IRS Appeals officer removed from her calculation certain large deposits reflecting refunded overpayments of health insurance premiums, as well as a $40,000 deposit that the Lipkas thereafter paid[2] to the IRS and the State of New Jersey from their income.  However, their additional documents did not include any substantiation of the amounts of their current legal expenses related to the pending criminal matter.  The IRS Appeals officer accordingly redetermined the Lipkas' gross monthly income to be $28,275 and their allowable monthly expenses to remain $17,954; thereby leaving them an approximate net monthly income of $10,321 available to satisfy their outstanding tax liability for 2017.  Because of the Lipkas' positive net monthly income,

---

[2] The Lipkas' bank statements show that they received a $40,000 deposit in September 2019, about $32,000 of which was paid to the IRS that same month, and the remainder of which was paid to the State of New Jersey.

[*5] the IRS Appeals officer concluded that they were not eligible for currently not collectible ("CNC") status and proposed an installment agreement ("IA") with monthly payments of $10,000 over a period of 72 months. The Lipkas responded that they would not be accepting the proposed IA because they would be unable to pay it.

*Notice of determination*

On July 20, 2020, IRS Appeals issued its "Notice of Determination Concerning Collection Actions under IRC Sections 6320 or 6330 of the Internal Revenue Code", denying the Lipkas the requested collection alternatives and sustaining the IRS's notice of intent to levy. The notice of determination stated in part:

> Letter dated December 9, 2019 . . . requested Form 433–A, Form 656 and verification of estimated tax payments to be received within 14 days . . . . Telephone conference was held with authorized representative Mr. Eyet. Some of the requested information was received, and the account was not current with estimated tax payments. Additional time was granted for the additional supporting documentation. It was determined that there were monthly average deposits into their bank accounts that total $28,275.45 a month, so a payment plan in the amount of $10,000.00 could be established to full pay the balance. The taxpayers stated they could not fund the payment plan in the amount of $10,000.00. Since the required installment agreement in the amount of $10,000.00 could not be accepted and based on the information available to us, the levy collection activity will be sustained.

The notice of determination advised the Lipkas of their right to challenge the determination by filing a petition in the U.S. Tax Court.

*Tax Court proceedings*

On August 20, 2020, the Lipkas timely filed their petition with this Court, seeking our review of IRS Appeals' determination to deny them collection alternatives and sustain the proposed levy. The petition shows a New Jersey address, and we assume that is the state in which they resided. Respondent filed his motion for summary judgment; the Lipkas filed an opposition to that motion; and respondent filed a reply.

**[\*6]**                                        *Discussion*

I.      *General legal principles*

     A.      *Summary judgment*

     The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when no genuine dispute of material fact exists and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The moving party (here, the Commissioner) bears the burden of showing that no genuine dispute of material fact exists, and for purposes of the motion, the Court will draw inferences in the light most favorable to the nonmoving party (in this case, the Lipkas). *See Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). However, the nonmoving party may not rest upon the mere allegations or denials of its pleading but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Lipkas have not demonstrated any material fact in dispute, and we therefore determine that this case is appropriate for summary adjudication.

     B.      *Agency-level review in levy cases*

     At the CDP hearing, IRS Appeals must determine whether the proposed collection action may proceed. In the case of a notice of levy, the procedures for the agency-level CDP hearing before IRS Appeals are set forth in section 6330(c). IRS Appeals is required to take into consideration several things:

     First, IRS Appeals must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. § 6330(c)(1), (3)(A). The attachment to the notice of determination sets forth the IRS Appeals officer's compliance with these requirements, and the Lipkas make no challenge as to verification in their petition or in their opposition to the motion for summary judgment. Consequently, no verification issues under section 6330(c)(1) are at issue, and we do not discuss this requirement further.

     Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. § 6330(c)(2)(A). The Lipkas indicated interest in collection

**[\*7]** alternatives of an offer-in-compromise ("OIC"), an IA, or CNC status; and their main contention here—that Appeals abused its discretion sustaining the levy notwithstanding their financial hardship situation—pertains to "the appropriateness of the collection action", which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if the taxpayer did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. § 6330(c)(2)(B). The tax liability that the IRS proposes to collect is the liability that the Lipkas reported on their return (plus penalties and interest); and in their requests for CDP hearing, they did not contest their underlying tax liability. Consequently, we do not discuss further the underlying liability.

Finally, IRS Appeals must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3)(C). The Lipkas did not raise intrusiveness in their request for a CDP hearing, in their petition to this Court, or in their opposition to the Commissioner's motion for summary judgment, so no issues as to "balancing" under section 6330(c)(3)(C) are before us, and we do not discuss this requirement further.

### C. *Tax Court review*

Where, as here, the underlying tax liability is not at issue, we review determinations of IRS Appeals for abuse of discretion. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Applying that abuse-of-discretion standard, we decide whether IRS Appeals' determination to deny the Lipkas a collection alternative and to sustain the proposed levy action was arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). We do not, however, substitute our judgment for that of IRS Appeals, and we do not decide independently whether we believe that the levy should be withdrawn. *See id.*

### II. *Analysis*

As we noted above in Part I.B, IRS Appeals is required to consider at a CDP hearing any "relevant issue" raised by the taxpayer, including "the appropriateness of collection actions" and "offers of collection alternatives". § 6330(c)(2)(A), (3)(B). We hold that IRS Appeals

**[\*8]** adequately addressed the issues that the Lipkas raised in the CDP hearing and did not abuse its discretion, for the reasons we now explain.

### A.     *"[E]conomic hardship" as a ground for releasing a levy*

Section 6343(a)(1)(D) provides that "the Secretary shall release the levy . . . if . . . the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer"; and the regulations provide that a levy creates "economic hardship" when the taxpayer is rendered "unable to pay his or her reasonable basic living expenses." Treas. Reg. § 301.6343-1(b)(4)(i). Any circumstance that would call for a levy to be "release[d]" would be a reason that a proposed levy would not be "appropriate[]" for purposes of section 6330(c)(2)(A)(ii), so "economic hardship" is a potential issue in a CDP case concerning a proposed levy. *See Vinatieri v. Commissioner*, 133 T.C. 392, 402 (2009).

#### 1.     *Whether hardship was raised and addressed*

The Lipkas assert in their petition that the IRS Appeals officer ignored their claim that sustaining the levy would cause them "financial hardship"; and their opposition to the Commissioner's motion for summary judgment similarly alleges "hardship" and cites section 6343. Although the Lipkas' request for a CDP hearing did not explicitly refer to "hardship", it did mention "financial circumstances"; and IRS personnel who referred the request to IRS Appeals and indicated "Collection alternatives . . . that apply" did check a box for "hardship"; so we deem that the Lipkas adequately raised the issue of economic hardship in their CDP hearing.

Like the Lipkas' request for a CDP hearing, IRS Appeals' notice of determination did not explicitly refer to "economic hardship" under section 6343. However, "hardship" is one of the considerations that IRS collections personnel consider in determining whether a taxpayer's liability is "currently not collectible", *see* Internal Revenue Manual 5.16.1.2.9 (Sept. 18, 2018); and in her consideration of CNC status, the Appeals Officer's analysis in this case plainly evaluated the Lipkas' circumstances to identify such hardship (and found none), as we set out below. We therefore hold that "economic hardship" as a ground for releasing a levy—and for rejecting a proposed levy—was both raised by the Lipkas and considered by IRS Appeals, and we now review that consideration for abuse of discretion.

[*9]    2.    *Whether IRS Appeals abused its discretion regarding hardship*

Under the pertinent regulation implementing section 6343, IRS Appeals is to consider any information provided by the taxpayer, including the following: (1) the taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, or other court-ordered payments; (3) the cost of living in the geographic area in which the taxpayer resides; (4) the amount of property exempt from the levy which is available to pay the taxpayer's expenses; (5) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor that the taxpayer claims bears on economic hardship. Treas. Reg. § 301.6343-1(b)(4)(ii). Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain an affluent or luxurious standard of living. Treas. Reg. § 301.6343-1(b)(4)(i).

The record shows that the IRS Appeals officer did not ignore the financial information that the Lipkas submitted. The case activity report reflects that they complained during a telephone conference of "a large bill" associated with the impending criminal matter against them. The IRS Appeals officer subsequently asked them for documentation regarding their legal expenses, but the supplemental documentation they provided did not include any legal bills. Their documentation did reveal that a portion of their deposits (originally treated by Appeals as available to pay tax) were in fact re-deposits of the same funds rather than real receipts, and that another portion had been used to pay the IRS and the State of New Jersey. However, IRS Appeals accepted the Lipkas' additional financial information, accepted their explanations about their deposits and, on the basis of their information, recomputed their ability to pay in their favor (i.e., reduced it). But even the favorably revised computation showed that the Lipkas could fully pay their total liability for 2017 over the remaining period of collections. Accordingly, we conclude that they put forward financial information concerning economic hardship and that IRS Appeals reasonably reviewed and fully accounted for this information in making its determination. Although the Lipkas may have disagreed with the IRS Appeals officer's judgment, this Court "do[es] not recalculate a taxpayer's ability to pay and substitute our judgment for that of the settlement officer." *O'Donnell v. Commissioner*, T.C. Memo. 2013-247, at *15.

**[\*10]** In their opposition the Lipkas identify no error in the IRS Appeals officer's calculation of their allowable expenses or their gross monthly income. Instead, they highlight that they are parties to a state law criminal matter. But taxpayers cannot rely on an unsubstantiated, unquantified claim that they would suffer economic hardship; rather, "taxpayers must submit complete and current financial information." *Rehn v. Commissioner*, T.C. Memo. 2016-54, at \*13. Accordingly, the Lipkas' claim that they should be granted relief from the proposed levy based solely on account of hardship arising from their being defendants in a criminal matter has no merit.

### B.   *Collection alternatives*

The Lipkas requested three collection alternatives on their Form 12153—i.e., that their account be placed in CNC status, or that they be allowed to enter an IA, or that IRS Appeals consider an OIC—and the notice of determination acknowledged these requests. The petition refers to the IA option (by mentioning the "payment plan in the amount of $10,000" that was "not feesable" [sic]) but otherwise does not mention these collection alternatives, and the Lipkas' opposition to the motion for summary judgment mentions none of them (instead relying solely on the contention as to "economic hardship"). However, all three required the same financial information that was relevant to assessing "economic hardship" under section 6343; the Lipkas had failed to provide that information; and we can very briefly address these overlapping requests.

### 1.   *OIC and IA*

During the CDP process and thereafter, the Lipkas never submitted a Form 656, as is requisite for an OIC, *see* Treas. Reg. § 301.7122-1(d)(1) ("An offer to compromise a tax liability pursuant to section 7122 must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary"), and never proposed terms for an IA in response to IRS Appeals' proposed terms (which the Lipkas rejected). Consequently, IRS Appeals did not abuse its discretion by not entertaining the Lipkas' supposed desire for an IA or an OIC. *See James A. Walker, P.A. v. Commissioner*, T.C. Memo. 2014-187, at \*10 ("[I]t is not an abuse of discretion where the taxpayer does not propose any terms for an installment agreement or propose a specific collection alternative").

**[\*11]** Moreover, even if the Lipkas had properly submitted an OIC or offered concrete terms for an IA, this fact would not change the result. As noted above, the IRS Appeals officer concluded that the Lipkas could pay their 2017 tax liability in full and, indeed, the record supports this determination. The financial information before IRS Appeals reflected a gross monthly income of $28,275 and allowable expenses of only $17,954, leaving a net difference of $10,321. On the basis of this information, the Appeals officer proposed a reasonable installment agreement calling for monthly payments of $10,000. Nevertheless, the Lipkas did not accept or counter IRS Appeals' offer and, despite ample opportunity to do so, never presented additional evidence of increased expenses to enable Appeals to further evaluate their financial situation and warrant a different determination. *See Pough v. Commissioner*, 135 T.C. 344, 351 (2010) ("[I]t is not an abuse of discretion to move ahead if the taxpayer fails to submit the requested items"); *Bullock v. Commissioner*, T.C. Memo. 2017-161, at \*10 ("[A]n SO is not required to negotiate with a taxpayer indefinitely").

### 2. *CNC status*

Because the Lipkas failed to offer anything new about their purported increased expenses, the same analysis of the evidence that supports IRS Appeals' non-acceptance of an OIC or an IA also supports its conclusion that they had not demonstrated entitlement to have their account placed in CNC status. *See Sullivan v. Commissioner*, T.C. Memo. 2012-337, at \*19 ("Appeals must of course have information that enables it to evaluate the taxpayer's financial situation."); *Willis v. Commissioner*, T.C. Memo. 2003-302 (finding that taxpayers' ability to make some payments toward their liability made them ineligible to have the liability classified as currently not collectible). The Lipkas' financial information demonstrated that they were currently able to pay toward their liability, so it was *not* "not collectible".

### C. *Face-to-face hearing*

Next, the Lipkas seem to suggest in their petition that the IRS Appeals officer erred in denying their request for an in-person CDP hearing. Though a CDP hearing can consist of a face-to-face conference, a proper section 6330 hearing can also occur by telephone or by correspondence under certain circumstances. *See Katz v. Commissioner*, 115 T.C. 329, 337–38 (2000). As relevant here, face-to-face CDP hearings to consider collection alternatives need not be granted where the taxpayer has failed to provide requested information or to comply

[*12] with filing and payment obligations. *See Campbell v. Commissioner*, T.C. Memo. 2013-57, at *17 (holding that it is not an abuse discretion for a settlement officer to deny a taxpayer's face-to-face hearing request when the taxpayer fails to supply proof of estimated tax payments); *see also* Treas. Reg. § 301.6330-1(d)(2), Q&A-D8. Here, the Lipkas repeatedly failed to timely satisfy the IRS Appeals officer's requests to submit a completed Form 433–A. Further, they were not current with their 2019 estimated tax payments when they requested the face-to-face CDP hearing, and nothing in the record indicates that they made any deposits of estimated tax to make themselves eligible for a face-to-face CDP hearing. The IRS Appeals officer therefore did not abuse her discretion in denying the Lipkas a face-to-face CDP hearing.

### D. *"Multi-agency collaboration"*

In their opposition the Lipkas also contend for the first time that IRS Appeals "fail[ed] to explore the opportunity of multi-agency collaboration which could result in the removal of encumbrances on assets that could be sold with proceeds used to satisfy the tax debt." Any contention that they advance in the Tax Court, however, must first have been raised in the CDP hearing before IRS Appeals, and nothing in the record indicates that they ever suggested such "multi-agency collaboration". *See Magana v. Commissioner*, 118 T.C. 488, 493 (2002) ("[G]enerally we consider only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the [IRS] Appeals Office"); *see also Giamelli v. Commissioner*, 129 T.C. 107, 115–16 (2007) (holding that review of collection determinations for abuse of discretion must be limited to issues raised before Appeals); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3. Because the Lipkas failed to raise this purported issue at the CDP hearing, we can hardly say that IRS Appeals abused its discretion by not considering it, so we will not consider it for the first time here.

### III. *Conclusion*

IRS Appeals did not abuse its discretion in denying a collection alternative to the Lipkas and sustaining the proposed levy to collect their unpaid income tax for 2017. As a result, the Commissioner's motion for summary judgment will be granted.

To reflect the foregoing,

*An appropriate order and decision will be entered.*